IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EILEEN D.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | No. 3:18-cv-01302-N (BT) |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final adverse decision by the Commissioner of the Social Security Administration (the "Agency"). For the reasons explained below, the Commissioner's decision should be REVERSED, and this case REMANDED for further administrative proceedings.

## Background

Plaintiff alleges she is disabled due to a variety of impairments, including Crohn's Disease, inflammation of the colon, chronic constipation, severe abdominal pain, leg pain, carpal tunnel syndrome in the right hand, anemia,

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

anxiety, depression, and output disorder. Administrative Record (A.R.) 57-58 (ECF No. 12-1). After her application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* 15. That hearing occurred on February 7, 2017, and resulted in a decision denying disability benefits. *Id.* 12-29. At the time of the hearing, Plaintiff was 44 years old. *See id.* 57. She has more than a high school education and past work experience as a retail sales clerk, a food sales clerk, and a personnel clerk. *See id.* 37, 51.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2013. *Id.* 17. At steps two and three, the ALJ determined that Plaintiff had the severe impairments of Crohn's disease/inflammatory bowel disease, right carpal tunnel syndrome, obesity, anemia history with infusions, an organic mental disorder,

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

depression, anxiety, hormone replacement therapy, and chronic constipation; nonetheless, the ALJ found that her impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* 17-22. At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work and, relying on the testimony of a vocational expert (VE), determined that she could perform her past relevant work in retail sales, as a sales clerk, a food clerk, and a personnel clerk. *Id.* 22-23, 28. Therefore, the ALJ found Plaintiff had not been under a disability from July 1, 2013 through April 27, 2017, the date of the ALJ's decision. *Id.* 28.

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Council affirmed. *Id.* 17. Plaintiff then filed this action in federal district court in which she argues the ALJ's decision results from an error of law and is not supported by substantial evidence. Specifically, Plaintiff argues (1) the ALJ failed to properly consider a medical source statement from her treating physician; (2) the ALJ improperly concluded that her attention deficit disorder was not a severe impairment; (3) the ALJ did not perform a function-by-function assessment of her RFC; and (4) the ALJ improperly concluded she can perform her past relevant work. The issues have been fully briefed, and the matter is ripe for determination.

## Legal Standard

Judicial review in social security appeals "'is limited to two inquiries: (1) whether the ALJ's decision is supported by substantial evidence on the record as a

3

whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985) ); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

## Analysis

Among the arguments Plaintiff makes is one that compels remand—that is, Plaintiff's RFC, as found by the ALJ, precludes the performance of her past relevant work. The ALJ found Plaintiff has the RFC to perform a limited range of light work. A.R. 22-23. And specifically with respect to her nonexertional limitations, the ALJ

found (1) Plaintiff has the ability to understand, carry out, and remember detailed tasks and instructions; (2) she can have occasional public contact and occasional coworker or supervisory interaction; (3) she should have activity that is routine and repetitive; and (4) she has the ability to ask questions or ask for help. *Id.* 51-53. The ALJ further found at step four that Plaintiff is not disabled because she could perform her past relevant work in retail sales, as a sales clerk, DOT code 290.477-014; a food clerk, DOT code 290.477-018; and a personnel clerk, DOT code 209.362-026. *Id.* 28. In making this determination, the ALJ relied on VE testimony that a hypothetical person of Plaintiff's age, education, work experience, and functional limitations could perform those occupations. *Id.* 51. Plaintiff argues, however, that the jobs identified by the ALJ require frequent social interaction and that she cannot perform any of those jobs because her RFC is limited to only occasional social interaction. Plaintiff argues the ALJ erred in relying on the VE testimony because it is contrary to the requirements for her past relevant jobs, as those requirements are reported by the Dictionary of Occupational Titles (DOT) and its supplement, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).[3]

---

[3] The DOT and the SCO, "comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs." *Veal v. Soc. Sec. Admin.*, 618 F.Supp.2d 600, 608–09 (E.D. Tex. 2009); *see Conaway v. Astrue*, 2008 WL 4865549, at *5 (N.D. Tex. Nov. 10, 2008) ("The DOT, along with a companion volume—[SOC]—contain descriptions of the requirements for thousands of jobs in the national economy."); *see* DOT xv (rev. 4th ed. 1991); SOC at vii; *Villa v. Sullivan*, 895 F.2d

When determining at step four whether a claimant could perform her past relevant work, the ALJ is permitted to consult a VE. *Dunn v. Colvin*, 2013 WL 4756377, at *3 (N.D. Tex. Sept. 4, 2013) (citing *Adams v. Astrue*, 2009 WL 774845, at *7 (W.D. La. Mar.24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work.") and *Pierce v. Astrue*, 2008 WL 4373036, at *13 (E.D. La. Sept.22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony."). A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir .1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan*, 58 F.3d at 132.

Occupational evidence provided by a VE generally should be consistent with the occupational information supplied in the DOT and the SCO. SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Because VE testimony sometimes conflicted with the occupational information supplied in DOT, the Commissioner issued SSR 00–4p to ensure that ALJs would expose and reconcile such conflicts before

---

1019, 1022 (5th Cir. 1990); *Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F.Supp.2d 607, 612 (E.D. Tex. 2009) ("The DOT and its supplement, [SCO], comprise a comprehensive listing of job titles in the United States, along with detailed description of requirements for each job . . . .").

relying on VE testimony. SSR 00–4p unambiguously establishes the ALJ's affirmative duty to bring to light and explain any "apparent unresolved conflict" between the VE's testimony and the DOT. *Id.* at *2. As part of his duty to fully develop the record at the hearing level, the ALJ must inquire on the record whether or not there is such an inconsistency. *Id.* at *4; *see Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted). When there is a conflict, neither the DOT nor the VE evidence automatically "trumps" the other. SSR 00–4p, 2000 WL 1898704, at *4. Rather, the ALJ must resolve the conflict by determining whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in his decision how any conflict that has been identified was resolved. *Id.*

A direct conflict between VE testimony and the DOT may arise when, as here, the VE's testimony concerning the exertional or skill level of a job is facially different from the description of the job found in the DOT. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). In this case, the VE testified at the administrative hearing that a hypothetical individual whose RFC was limited to, among other things, "just occasional public contact" and "just occasional co-worker, supervisor interaction" could perform Plaintiff's past relevant work as a sales clerk, DOT code 290.477-014; a food clerk, DOT code 290.477-018; and a personnel clerk, DOT code 209.362-026. A.R. 51, 52. However, the DOT and the SCO provide that Plaintiff's past jobs require more than occasional social interaction with the public

7

or coworkers.[4] For example, the SCO provides that all three of the jobs at issue require "frequent" talking and hearing. SCO at 341, 366.

Further, the DOT description for the sales clerk job provides that an individual performing the job has at least frequent contact with customers. The required tasks include that the individual:

> [o]btains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to promote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to product sold or type of store.

DOT 290.477-014. The description for the sales clerk food job similarly requires frequent customer contact, as the individual performing it:

> [o]btains or prepares food items requested by customers in retail food store, totals customer bill, receives payment, and makes change: Fills customer order, performing duties such as obtaining items from shelves,

---

[4] The DOT defines "occasionally" to mean the activity or condition exists up to 1/3 of the time; "frequently" means the activity or condition exists from 1/3 to 2/3 of the time. DOT App. C.

8

> freezers, coolers, bins, tables, or containers; cleaning poultry; scaling and trimming fish; slicing meat or cheese, using slicing machine; preparing take-out sandwiches and salads; dispensing beverages; and warming food items in oven. Weighs items, such as produce, meat, and poultry to determine price. Lists and totals prices, using paper and pencil, calculator, or cash register. Informs customer of total price of purchases. Receives payment from customer for purchases and makes change. Bags or wraps purchases for customer. Cleans shelves, bins, tables, and coolers. Stamps, marks, or tags price on merchandise. Sets up displays and stocks shelves, coolers, counter, bins, tables, freezers, containers, or trays with new merchandise. May make deliveries to customer home or place of business.

DOT 290-477-018. Finally, the personnel clerk job requires frequent social interaction with coworkers, as the individual performing it:

> [c]ompiles and maintains personnel records: Records employee information, such as personal data; compensation, benefits, and tax data; attendance; performance reviews or evaluations; and termination date and reason. Processes employment applications and assists in other employment activities. Updates employee files to document personnel actions and to provide information for payroll and other uses. Examines employee files to answer inquiries and provides information to authorized persons. Compiles data from personnel records and prepares reports using typewriter or computer. May administer and score aptitude, personality, and interest tests. May explain bonding procedure required by company, and assist in completion of bonding application. May compute wages and record data for use in payroll processing.

DOT code 209.362-026. There is thus a direct conflict between the DOT and the SCO descriptions of Plaintiff's past relevant jobs, which require frequent social

9

interaction, and the VE testimony that such jobs can be performed by someone who is limited to only occasional contact with the public or coworkers.

When a direct conflict exists between the DOT and the VE's testimony, the ALJ must explain or resolve the conflict. *Carey*, 230 F.3d at 145. If the ALJ does not resolve the conflict, the weight of the VE's testimony is lessened such that reversal and remand for lack of substantial evidence usually follows. *Id.* at 146. A remand is appropriate if the plaintiff establishes that she was prejudiced by the ALJ's error to resolve the conflict, which can be achieved by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Although the ALJ relied on the VE's testimony to find that Plaintiff could perform her past relevant work, there is nothing in the record that explains how such jobs can be performed by someone who is limited to occasional social interaction. The ALJ did not inquire into, and the VE did not expound upon, the requirements of any of Plaintiff's past relevant jobs, either as Plaintiff actually performed those jobs or as those jobs are generally performed. In accordance with SSR 00–4p, the ALJ asked whether any conflicts existed between the VE's testimony and the DOT, *see* A.R. 52-53, but the VE's "no" answer was itself in direct conflict with the DOT. The ALJ failed to articulate any plausible reason for accepting VE testimony that conflicts with the DOT. Indeed, it appears that neither the VE nor the ALJ was actually aware of the conflict with the DOT and SCO

10

requirements. As a result, substantial evidence does not support the ALJ's finding at step four that Plaintiff can perform her past relevant work. *See, e.g., Seale v. Astrue*, 2012 WL 1019958, at *5 (N.D. Tex. Mar. 8, 2012).

The Commissioner argues that remand is not required because Plaintiff's counsel should have raised the conflict at the hearing and cross-examined the VE about it. Under SSR 00–4p, the ALJ must identify potential conflicts and explain in the decision how any identified conflict was resolved. SSR 00–4p, 2000 WL 1898704, *1–2. SSR 00–4p does not limit the ALJ's obligation to *pro se* parties. *See id.* And a claimant is not required to raise the issue of any discrepancy at the hearing. *Romine v. Barnhart*, 454 F. Supp.2d 623, 627–28 (E.D. Tex. 2006) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735–3 6 (7th Cir. 2006)); *see also Dunn*, 2013 WL 4756377, at *5 (citing *Carey*, 230 F.3d at 146–47) (holding that where there was a direct conflict between the vocational expert's testimony and the DOT, the claimant "did not need to raise the conflict at the hearing or risk waiving it"). By failing to identify and address the direct conflict, the ALJ erred. *Edmond*, 2019 WL 1424612, at *14.

Furthermore, such error prejudiced Plaintiff. Had the ALJ fully developed the record and further inquired into the conflict, additional evidence may have emerged that might have led to a different decision. The ALJ likely would have realized that Plaintiff's RFC precluded her return to her past relevant work, and he would have proceeded to step five of the sequential analysis to determine if other work exists that Plaintiff is capable of performing with her RFC. But a court cannot

11

assume the existence of evidence not in the record, or resolve a conflict that the ALJ did not consider. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."). Consequently, the case must be remanded.[5] *See Edmond v. Berryhill*, 2019 WL 1424612 (N.D. Tex., Mar. 29, 2019) (remanding ALJ's nondisability decision where there was no on-the-record explanation for the inconsistency between the VE's testimony and the requirements under the DOT); *Olive v. Colvin*, 2017 WL 1653303, at *7 (E.D. La. Mar. 31, 2017) (same).

## Recommendation

The Commissioner's decision should be REVERSED, and this case REMANDED for further administrative proceedings.

**SO ORDERED**.

September 6, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[5] Because this Court is recommending that this case be remanded pursuant to the above issue, the Court will not consider the other remaining issues raised by Plaintiff. On remand, the ALJ should carefully consider such issues as well.

# INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT

The United States District Clerk shall serve a true copy of these Findings, Conclusions, and Recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these Findings, Conclusions, and Recommendation must serve and file written objections within fourteen days after service of the Findings, Conclusions, and Recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these Findings, Conclusions, and Recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to these Findings, Conclusions, and Recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).